**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **JORGE L. CARBAJAL,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Cause No. EP-24-CV-49-KC** |
| | § | |
| **ERIC GUERRERO,**[1] | § | |
| **Respondent.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Petitioner Jorge L. Carbajal challenges Respondent Eric Guerrero's custody of him through an opposed *pro se* petition for a writ of habeas corpus under 28 U.S.C. §§ 2241, 2254. Pet'r's Pet., ECF No. 1.[2] His petition is neither barred by limitations nor a successive petition. 28 U.S.C. § 2244(b) & (d). His numerous claims are also all exhausted. 28 U.S.C. § 2254(b). But his claims are without merit, and his petition will be denied.

**BACKGROUND AND PROCEDURAL HISTORY**

Carbajal is a 50-year-old state prisoner serving a life-without-parole sentence at the Bill Clements Unit in Amarillo, Texas. *See* Texas Department of Criminal Justice (TDCJ), Inmate Information Details, https://inmate.tdcj. texas.gov /InmateSearch (search for TDCJ No. 02312080, last visited June 16, 2025).

Carbajal was indicted by an El Paso County grand jury for allegedly committing multiple

---

[1] Bobby Lumpkin was previously named Respondent in this action. He was succeeded by Eric Guerrero as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Accordingly, Guerrero is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] "ECF No." refers to the Electronic Case Filing number for documents docketed in this cause. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

sexual offenses against Jane[3]—who believed Carbajal was her biological father—while she was a child and a young woman. *Carbajal v. State*, 659 S.W.3d 164, 173 (Tex. App.—El Paso Apr. 30, 2021, pet. ref'd). Count One alleged Carbajal committed acts of continuous sexual abuse against the victim while she was under 14; Counts Two through Eleven alleged he sexually assaulted the victim while she was younger than 17 by penetrating her sexual organ and mouth on various occasions between April 27, 2015, and April 27, 2017; Count Twelve alleged he engaged in sexual contact with the victim while she was younger than 17 years of age by touching her breasts; Counts Thirteen and Fourteen alleged he sexually assaulted the victim by penetrating her sexual organ and mouth without her consent. *Id*. at 174–75. Each count included an enhancement paragraph charging that Carbajal was finally convicted of felony aggravated assault with a deadly weapon in 2002. *Id*. at 173.

A jury found Carbajal guilty on all thirteen counts submitted with the charge (Counts I through V and VII through XIV). *Id.* at 178. Following a punishment hearing, the jury also found the enhancement paragraph of each count was true, and assessed a punishment of life in prison plus a $10,000 fine for each conviction. *Id*. The trial court imposed the jury's sentence as to each of the thirteen counts with all punishment running concurrently. *Id*.

On appeal to the Eighth Court of Appeals, Carbajal raised five issues. *Id*. at 173. First, he asserted the evidence was legally insufficient to support the convictions on Counts XIII and XIV. *Id*. at 179. Second, he claimed Texas Penal Code § 21.02, as charged in Count I, violated his due process rights and permitted his conviction without unanimity. *Id*. Third, he complained the trial court committed constitutional error as to all counts by failing to force the State to elect particular acts upon which it relied to support the convictions. *Id.* Fourth, he argued the trial

---

[3] Jane is a pseudonym for the victim

court erred in ruling on the admission of certain evidence, which he claimed was overly prejudicial. *Id.* Finally, he complained about the jury argument made by the State during the sentencing phase of his trial. *Id.* Because the State conceded his double-jeopardy argument had merit as to Count XI, the Eighth Court of Appeals reversed and rendered a judgment of acquittal with respect to that count only. *Id.* at 173. The appellate court modified each judgment to reflect that Carbajal pleaded "true" to each enhancement paragraph, and the jury made a finding of "true" to each paragraph. *Id.* at 194. Otherwise, finding no error as to all remaining counts and all remaining issues, the appellate court modified each judgment rendered, and affirmed the trial court's judgment as modified. *Id*. at 173.

Carbajal's state writ application—which raised 32 grounds for relief—was denied without a written order on January 10, 2024. State Writ Appl., ECF No. 14-34 at 197–245; Action Taken, ECF No. 14-37.

Carbajal now raises the same 32 grounds for relief raised in his state writ application in his federal petition:

1.  His trial counsel provided ineffective assistance when he failed to file a motion to quash Counts I, III, VII, and X on the grounds that they were not supported by a complaint.

2.  His trial counsel provided ineffective assistance by failing to file a motion to quash Counts VIII and XIV on the grounds that the affidavit supporting the complaint was vague.

3.  His trial counsel provided ineffective assistance by failing to force the State to make an election as to the specific acts which supported his conviction on Count I, allegation five.

4.  His trial counsel provided ineffective assistance by failing to force the State to make an election as to the specific acts which supported his conviction on Count I, allegation two.

5. The prosecutor misled the jurors concerning Count I, allegation two, during closing argument.

6. His trial counsel provided ineffective assistance when he failed to properly argue the Court should force the State to make elections concerning Count I.

7. Count I subjected him to double jeopardy.

8. His trial and appellate counsel provided ineffective assistance because they failed to object when the State did not make elections concerning Counts I and III.

9. His trial and appellate counsel provided ineffective assistance when they failed to challenge the sufficiency of the evidence to support his convictions on Counts II and III.

10. His trial and appellate counsel provided ineffective assistance when they failed to object to the double jeopardy the State subjected him to in Counts I, III, VII, and X.

11. His trial and appellate counsel provided ineffective assistance when they failed to object to the double jeopardy the State subjected him to in Counts II, V, IX, and XIV.

12. The trial court erred when it failed to require the State to elect the specific acts on which it relied for his convictions on Counts I, IV, VIII, and XIII.

13. The trial court erred when it instructed the jury concerning the "on or about" language in the indictment and force an election between Counts I and II through XIV.

14. The trial court erred when it instructed the jury concerning the "on or about" language in Counts II through XIV and allowed the State to prove dates other than the ones alleged in the indictment.

15. His trial counsel provided ineffective assistance when he failed to request further DNA testing of the sock the victim testified that she spit into after she claims Carbajal ejaculated in her mouth.

16. His trial counsel provided ineffective assistance when he failed to object to the prosecutor's inflammatory misquotes which were not supported by the evidence.

4

17. The prosecutor engaged in misconduct during closing argument when he described events which were not supported by the record.

18. His trial counsel provided ineffective assistance when he failed to impeach two key witnesses—stepsons Jose Gutierrez and Emmanuel Carbajal.

19. His trial counsel provided ineffective assistance when he failed to introduce exculpatory evidence.

20. His trial counsel provided ineffective assistance when he failed to call his niece Getsemani Alvarado, who was helping the victim plan a move out of his house and was waiting outside the courtroom to testify.

21. The trial court erred when it permitted the introduction of extraneous evidence that he told the victim that, "[i]f she was positive, he would take her to Juarez to get an abortion."

22. The appellate court erred when it evaluated the harm caused by the extraneous evidence that "he would take her to Juarez to get an abortion."

23. The appellate court erred when it evaluated the harm caused by the trial court's failure to obligate the state to elect the offenses relied upon for the convictions.

24. His trial and appellate counsel provided ineffective assistance when they failed to raise the double jeopardy issue at trial and during the appeal.

25. He was subjected to double jeopardy on Counts I and XI because they were both based on the same criminal act.

26. His trial and appellate counsel provided ineffective assistance when they failed to object to the double jeopardy that he claimed regarding Counts I and XI.

27. His trial counsel provided ineffective assistance when he failed to file a motion to quash Counts I, III, VII, and X because the police report did not allege that he used a brush during the sexual assaults on the victim.

28. The prosecution engaged in misconduct when they indicted him without a supporting complaint.

29. His trial counsel provided ineffective assistance when he failed to raise the double jeopardy bar to the superseding indictment.

30. Texas Penal Code § 21.03 (continuous sexual assault of a child) is unconstitutional.

31. His conviction violates the Sixth Amendment because the jury was not required to reach a unanimous verdict.

32. The cumulative errors warrant relief.

Pet'r's Pet., ECF No. 1 at 7–80. He asks the court to order his immediate release or a new trial. *Id.* at 84.

Guerrero opposes Carbajal's petition but agrees it "is not barred by limitations or subject to the successive petition bar, 28 U.S.C. § 2244(b) & (d), and his claims are exhausted." Answer, ECF No. 15 at 11. He asks the Court to dismiss Carbajal's petition as meritless. *Id.* at 11.

## STANDARD OF REVIEW

### A. Writ of Habeas Corpus

The writ of habeas corpus is "an extraordinary remedy" reserved for those petitioners whom "society has grievously wronged." *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993). It "is designed to guard against extreme malfunctions in the state criminal justice system." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). It may be granted by a federal court pursuant to 28 U.S.C. § 2254 only where a state prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Preiser v. Rodriguez*, 411 U.S. 475, 484–87 (1973). It may not be granted to correct errors of state constitutional, statutory, or procedural law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

Consequently, federal habeas "courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). They may grant § 2254

relief only when a petitioner successfully raises a federal issue. *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). And they should do so only as "law and justice require." *Brown v. Davenport*, 596 U.S. 118, 132 (2022) (citing 28 U.S.C. §§ 2241, 2243).

### B. Previously Adjudicated Claims

A federal habeas court reviews a previously adjudicated claim on the merits in a state court under the "difficult to meet" standards in 28 U.S.C. § 2254(d). *Harrington v. Richter*, 562 U.S. 86, 98–99, 102 (2011). It must use "a highly deferential standard of review for evaluating state-court rulings and … state-court decisions [must] be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66 (2011) (per curiam) (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011)). It may not grant relief unless the state-court adjudication (1) "'was contrary to' federal law then clearly established in the holdings of" the Supreme Court, (2) "'involved an unreasonable application of' such law," or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Richter*, 562 U.S. at 100 (quoting § 2254(d)(1)–(2)). It "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). It must measure "[s]tate-court decisions … against [Supreme] Court[] precedents as of 'the time state court renders its decision.'" *Id*. at 183 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)). And it cannot grant relief predicated on Supreme Court dicta, "high level of generality" holdings, or "offend[ing] lower federal court precedents." *Davenport*, 596 U.S. at 136. In addition, it must presume state-court findings of fact are correct and require the petitioner to carry "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This "not only applies to explicit findings of fact," but also "those unarticulated

findings which are necessary to the state court's conclusions of mixed law and fact."[4] *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). Finally, it must accept state court decisions on procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

Even if a prisoner can overcome these limitations, he "must still show, on *de novo* review, that he is in custody in violation of the constitution or laws or treaties of the United States." *Langley v. Prince*, 926 F.3d 145, 156 (5th Cir. 2019). Thus, a prisoner must "persuade a federal habeas court that 'law and justice require' relief. And whatever else those inquiries involve, they continue to require federal habeas courts to apply [the] Court's precedents governing the appropriate exercise of equitable discretion." *Brown*, 596 U.S. at 134 (citing 28 U.S.C. § 2243; *Fry v. Pliler*, 551 U.S. 112, 119 (2007)).

### C. Ineffective Assistance of Counsel

A petitioner's ineffective-assistance-of-counsel claim is analyzed under the two-pronged test in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, a petitioner must demonstrate (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 689–94. To establish deficient performance, he must present evidence that his counsel's assistance fell "'below an objective standard of reasonableness.'" *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[4] Carbajal argues—incorrectly—in his reply that because the Court of Criminal Appeals did not enter findings of fact or conclusions of law on his state habeas application, the presumption of correctness should not apply in his case. Reply, ECF No. 26 at 15.

proceeding would have been different." *Strickland*, 466 U.S. at 694. If a petitioner fails to prove one prong, the reviewing court need not analyze the other. *See Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

In addition to applying the *Strickland* two-prong test, a federal habeas court must also review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). This means it must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *see also Harrington*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.").

## ANALYSIS

### A. Section 2254(d) Precludes Relief on Carbajal's Indictment-Related Ineffective-Assistance-of-Counsel Claims (Claims 1, 2, 3, 4, 6, 8, 10, 11, 24, 26, 27, 29).

Carbajal raises twelve claims asserting he was deprived of his Sixth Amendment right to the effective assistance of trial and appellate counsel based on their failure to challenge the indictment's many counts on various state and federal grounds. *See* Pet'r's Pet., ECF No 1 at 8, 11, 13–14, 17, 21–22, 26–27, 29, 31, 33, 42–43, 45, 49–50, 52, 62, 68, 72–73. As he exhausted these claims in his state habeas application, Carbajal must now establish that the Court of Criminal Appeals' rejection of each of his claims was based on its unreasonable application of *Strickland* to prevail. *Jackson v. Johnson*, 150 F.3d 520, 522–24 (5th Cir. 1998).

**(1) The Court of Criminal Appeals Reasonably Rejected Carbajal's Indictment-Related Ineffective-Assistance-of-Counsel Claims (Claims 1, 2, and 27).**

In Claims 1, 2, and 27, Carbajal argues that he was deprived of constitutionally effective assistance when his trial counsel failed to move to quash the indictment on various state procedural grounds. Specifically, Carbarjal faults his trial counsel for failing to quash Counts I, III, VII, and X because the complainant's affidavit never alleged that he penetrated her vagina with a brush. Pet'r's Pet., ECF No 1 at 8; *see* Indictment, ECF No. 14-1 at 10, 12, 16, 19. In Claim 2, he faults his trial counsel for failing to quash Counts XIII and XIV for vagueness. *Id.* at 11. He observes the complainant's affidavit fails to allege any incident occurred on or about July 26, 2018, as alleged in Count XIII, or May 1, 2018, as alleged in Count XIV. *Id.*; *see* Indictment, ECF No. 14-1 at 22, 23. In Claim 27, he re-asserts his allegation that Counts I, III, VII, and X are unsupported by the complainant's affidavit. *Id.* at 68.

A federal habeas court will not review "'the sufficiency of a state indictment … unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction.'" *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984) (quoting *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980). It will make this determination "'only by looking to the law of the state where the indictment was issued.'" *Id.* (quoting *Johnson v. Estelle*, 704 F.2d 232, 236 (5th Cir. 1983)). It is foreclosed from considering such a claim "'[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case.'" *Id.* (quoting *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969).

To the extent Carbajal faults counsel for failing to move to quash Counts XIII and XIV for vagueness, the record shows that his trial counsel did precisely what Carbajal now says he did not do. Pet'r's Pet., ECF No. 1 at 11. The record shows that Carbajal's trial counsel filed and argued a motion to quash the indictment on the grounds that Counts XIII and XIV "fail[ed] to give sufficient notice of the charge against him." Mot. to Quash, ECF No. 14-2 at 70; Mot. Hearing Tr., ECF No. 14-7 at 69–72 ("[Y]our motion to quash … is denied with regard to Counts XIII and XIV."). On the same basis, his counsel moved the trial court to order the State to elect which count it would proceed on. Mot. to Order State to Elect, ECF No. 14-2 at 72; Mot. Hearing Tr., ECF No. 14-7 at 72–74. Finally, his counsel filed a supplemental motion to quash based on the unconstitutionality of "Texas Penal Code §21.02 [which] provides that a person commits an offense if he or she, during a period that is 30 days or more, commits two or more acts of sexual abuse against a child younger than 14 years of age." Supp. Mot. to Quash, ECF No. 14-2 at 74. His counsel argued "[t]he statute provides that the jury members are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." But after hearing the arguments of counsel, the trial court denied all the motions of Carbajal's counsel. Order, ECF No. 14-3 at 3; Mot. Hearing Tr., ECF No. 14-7 at 73–74 ("The request that the State be made to elect the provisions of the statute under which they're going to go forward is denied. Your challenge to the statute as unconstitutional is overruled.").

The Court of Criminal Appeals not only refused to hear Carbajal's case on discretionary review but also denied a writ for habeas corpus sought on the claimed insufficiency of the indictment. When it rejected Claims 1, 2, and 27, it implicitly found that Counts I, III, VII, X, XIII,

and XIV of the indictment were valid under Texas law, the trial court had jurisdiction to address these allegations, and Carbajal was not prejudiced by any purported error by his trial counsel and could not prove the second prong of the *Strickland* test.

Faced with a denial on the merits, Carbajal must establish now establish no fairminded jurists could apply *Strickland* to the same end. *See Richter*, 562 U.S. at 103 (explaining application of § 2254(d)). But Carbajal provides no federal law contrary to the Court of Criminal Appeals' rejection of his claims. And since the Court of Criminal Appeals' rejection of his ineffective-assistance claim is necessarily based upon its interpretation and application of Texas law, this Court is bound by those determinations. *See Amador v. Quarterman*, 458 F.3d 397 (5th Cir. 2006); *Schaetzle v. Cockrell*, 343 F.3d 440, 448 (5th Cir. 2003); *see also McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) ("Where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue."). Indeed, the Court of Criminal Appeals' interpretation of its own law is binding on a federal court and compels this Court to reject of Claims 1, 2, and 27. While this does not vitiate the Court's obligation to determine whether the state court's ultimate denial contravenes or unreasonably applies *Strickland*, its determination must accord proper deference to the Court of Criminal Appeals' resolution of state law issues.

Finally, had trial counsel successfully moved to quash the indictment on the proposed grounds, the State could—and presumably would—have cured the defect through reindictment. *See, e.g., Morlett v. Lynaugh*, 851 F.2d 1521, 1525 (5th Cir. 1988) (finding no prejudice for trial counsel's failure to quash defective indictment where State could reindict). Hardly walking scot-free as he assumes he would have, Carbajal's relief would have likely been an amendment to the indictment. *Amaya v. State*, 551 S.W.2d 385, 387 (Tex. Crim. App. 1977). Trial, conviction,

and sentencing would have followed all the same. Carbajal, therefore, fails to establish he was prejudiced by counsel's purported failure to quash the indictment.

The Court finds that the Court of Criminal Appeals' rejection of Claims 1, 2, and 27 was both reasonable and consistent with *Strickland*. Because fairminded jurists applying *Strickland* would have denied relief too, the Court finds that Carbajal fails to demonstrate an entitlement to relief on his federal habeas claims. Accordingly, the Court finds that 28 U.S.C. § 2254(d) precludes relief on Claims 1, 2, and 27.

### (2) The Court of Criminal Appeals Reasonably Rejected Carbajal's Election-Related Ineffective-Assistance-of-Counsel Claims (Claims 3, 4, 6, 8).

In Claims 3, 4, and 6, Carbajal argues that his trial counsel was ineffective when he failed to properly argue the State was required to elect between the multiple allegations of continuous sexual abuse in Count I. Pet'r's Pet. ECF No. 1 at 13, 17, and 21. In Claim 8, he alleges that his trial and appellate counsel failed to get the Court to order the State to elect as to Counts II–V and VII–XIV. *Id.* at 26. He admits that his trial counsel filed and argued motions to order the State to make the elections. *Id*. at 14; *see* Mot. to Order State to Elect, ECF No. 14-2 at 72; Mot. Hearing Tr., ECF No. 14-7 at 72–74; Trial Tr., ECF No. 14-10 at 23; Trial Tr., ECF No. 14-11 at 61, 154. But he alleges trial counsel was ineffective for failing to "properly argue" the motion to force the State's election. Pet'r's Pet. ECF No. 1 at 13–14, 17.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 564 U.S. 74, 76 (2005).

Carbajal's counsel moved the trial court to order the State to elect which allegation it would proceed with for the offense of continuous sexual assault of a child in Count I. Mot. to Order State to Elect, ECF No. 14-2 at 72; Mot. Hearing Tr., ECF No. 14-7 at 72–74. His counsel also filed a supplemental motion to quash based on the unconstitutionality of "Texas Penal Code §21.02 [which] provides that a person commits an offense if he or she, during a period that is 30 days or more, commits two or more acts of sexual abuse against a child younger than 14 years of age." Supp. Mot. to Quash, ECF No. 14-2 at 74. His counsel argued "[t]he statute provides that the jury members are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." But after hearing the arguments of his counsel, the trial court denied his motions. Order, ECF No. 14-3 at 3; Mot. Hearing Tr., ECF No. 14-7 at 73–74 ("The request that the State be made to elect the provisions of the statute under which they're going to go forward is denied. Your challenge to the statute as unconstitutional is overruled.").

On appeal, Carbajal argued "the State's refusal to elect acts relied on for conviction resulted in Carbajal twice being convicted of the same criminal act in violation of the double jeopardy clauses of both the United States and Texas Constitutions." *Carbajal*, 659 S.W.3d at 183.

The Eighth Court of Appeals rejected the argument and explained that a defendant could not be convicted of both continuous sexual abuse and a predicate offense listed in Texas Penal Code §21.02 unless the predicate offense occurred outside the period in which the continuous sexual abuse was committed:

> To obtain a conviction for continuous sexual abuse of a child, the State must show that the defendant committed at least two acts of sexual abuse against a child younger than fourteen years of age during a period of at least thirty days' duration.

14

Tex. Penal Code Ann. § 21.02(b)(1), (2)(A). This provision permits the State to seek one conviction for multiple acts of sexual abuse, over an extended period of time, as an alternative to the near impossibility of requiring the State to allege specific dates. *See Price v. State*, 434 S.W.3d 601, 609 (Tex. Crim. App. 2014) ("[T]he Legislature intended to permit one conviction for continuous sexual abuse for conduct committed against a single complainant during a specified time period."). The statute lists eight predicate offenses to include aggravated sexual assault of a child under the age of fourteen. *See* Tex. Penal Code Ann. § 21.02(c); *id*. § 22.021(a)(1), (2)(B).

*Id*. at 184.

When the Court off Criminal Appeals subsequently denied Carbajal's ineffective-assistance-of-counsel claims in his state habeas proceedings, it implicitly found—consistent with the lower court's opinion and its own precedent—that Carbajal's Count I election argument was futile.

Carbajal provides no federal law to the contrary. And where the Court of Criminal Appeals rejection of an ineffective-assistance claim is necessarily based upon its interpretation and application of state law questions of deficiency and prejudice, this Court is bound by those determinations. *Amador*, 458 F.3d at 397; *Schaetzle*, 343 F.3d at 448. More plainly, the highest state court's interpretation of its own law is binding on the Court and compels its rejection of Carbajal's Claims 3, 4, 6, and 8.

### (3) The Court of Criminal Appeals Reasonably Rejected Carbajal's Double-Jeopardy Ineffective-Assistance-of-Counsel Claims (Claims 10, 11, 24, 26, 29).

In Claims 10, 11, 24, 26, and 29, Carbajal alleges his trial and appellate counsel were ineffective for failing to properly argue that Count I alleged the same discrete acts as Counts II through XIV. Pet'r's Pet., ECF No. 1 at 31, 33, 62, 66, 72. As a result, he argues he was twice

convicted of the same criminal acts in violation of the double jeopardy clauses of the United States

Constitutions. *See* U.S. Const. amend. V.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the

Fourteenth Amendment, provides defendants with three protections:

> (1) protection against a second prosecution for the "same" offense following an acquittal; (2) protection against a second prosecution for the "same" offense following a conviction, and (3) protection against multiple punishments for the "same" offense."

*Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021) (citing *Kuykendall v. State*, 611

S.W.3d 625, 627 (Tex. Crim. App. 2020); *Speights v. State*, 464 S.W.3d 719, 722 (Tex. Crim. App.

2015)). The Supreme Court's "*Blockburger* test" used to analyze double jeopardy claims presumes

that two separately defined statutory offenses are not the same so long as each offense requires

proof of an elemental fact that the other does not. *Blockburger v. United States*, 284 U.S. 299, 304

(1932).

Both Carbajal's trial and appellate counsel did raise double-jeopardy arguments. His trial

counsel asserted double-jeopardy violations in both his motion to quash and his motion for the

state to elect. Mot. to Quash, ECF No. 14-2 at 70; Mot. to Order State to Elect, ECF No. 14-2 at 72.

He argued in both motions that "[t]he Indictment fails to give Defendant … sufficient notice of the

charge against him in order that he may prepare for trial and plead the judgment that may be given

upon this charge in bar of any prosecution for the same offense." *Id*. But his objections were

overruled by the trial court. Order, ECF No. 14-3 at 2 (overruling motion to quash); Order, ECF

No. 13-3 at 3 (denying motion to elect). Carbajal's appellate counsel also raised the

double-jeopardy claim. Appellant's Br., ECF No. 14-22 at 28–31. But his arguments were

rebuffed. Carbajal, 659 S.W.3d at 190.

As detailed in the Eighth Court of Appeals' analysis, Carbajal's convictions for Counts I

through V, VII through X, and XII through XIV did not implicate the constitution's

double-jeopardy protections. *Id.* at 183–190. The Court explained that Count I alleged continuous

sexual abuse of a child younger than 14. *See* Indictment, ECF No. 14-1 at 10. It added the other

Counts alleged offenses which occurred during other stages of the victim's life:

> The record shows Jane reached age fourteen on the dates alleged for Counts II
> through IV, age fifteen for the dates alleged for Counts V and VII, age sixteen for
> the dates alleged for Counts VIII through XI, and age seventeen for the dates
> alleged for Counts XIII and XIV. And even more importantly, the evidence
> presented at trial shows that it supported acts of sexual abuse being committed
> against Jane, on an ongoing basis, after April 2015, when she had already reached
> her fourteenth birthday, and continued thereafter through July 26, 2018. Thus, the
> independent offenses as charged under Counts II through V, VII through XI, XIII,
> and XIV, were all committed during a time outside the timeframe of the charge for
> continuous abuse of a child [in Count I].

*Carbajal*, 659 S.W.3d at 184–85. Nonetheless, the State otherwise conceded that the conviction

under Count XI should be reversed on double jeopardy grounds. *Id.* at 173. As a result, apart from

Count XI which was vacated, none of Carbajal's convictions were based on the same incident of

criminal conduct. *Id.* at 194.

Trial and appellate counsel's purported failure to object on futile grounds—that they did in

fact raise—cannot support a finding of deficient performance, much less prejudice. *See Koch v.*

*Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). The Court of Criminal Appeals' rejection of Claims 10,

11, and 26 reflects a reasonable application of *Strickland*.

In Claim 24, Carbajal complains of trial and appellate counsel's failure to object to Counts VIII and XI on double-jeopardy grounds. Pet'r's Pet., ECF No. 1 at 62. But Carbajal already received relief on this claim when the Eighth Court of Appeals entered a judgment of acquittal as to Count XI:

> for a different reason than that argued by Carbajal, the State otherwise concedes in its briefing that the conviction under Count XI should be reversed on double jeopardy grounds. As the State points out, Counts VIII and XI both allege the same on-or-about date, the same age, and the same offense—Carbajal causing the penetration of Jane's mouth with his sexual organ. Because Carbajal was convicted of Count VIII, he cannot be convicted again of the same offense alleged in Count XI. Even if the second conviction results in no greater sentence, it results in an impermissible punishment. In such case, the remedy is to affirm the conviction for the most serious offense and vacate the other conviction. Because Count VIII was the first of these two convictions, it stands. Count XI is reversed as an impermissible punishment.

*Carbajal*, 659 S.W.3d at 185.

"Article III of the Constitution limits … federal-court jurisdiction[] to 'Cases' and 'Controversies.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). A claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id*. at 396 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). If a controversy becomes moot, the claim is dismissed for lack of subject matter jurisdiction. *Lewis v. Continental Bank Corp*., 494 U.S. 472, 477 (1990).

As the Court can offer no further relief, it finds that Claim 24 is moot. It additionally finds that the Court of Criminal Appeals' rejection of Claim 24 was reasonable.

In Claim 29, Carbajal complains that his trial counsel was ineffective for failing to argue that double jeopardy barred the State from amending the indictment after he entered his guilty plea. Pet'r's Pet., ECF No. 1 at 72. But Carbajal provides no legal basis for the double-jeopardy

objection because jeopardy does not attach in a jury trial until the jury is empaneled and sworn. *E.g.*, *Crist v. Bretz*, 437 U.S. 28, 35 (1978); *Justs. Of Bos. Mun. Ct. v. Lyndon*, 466 U.S. 294, 309 (1984). As Carbajal's jury was not empaneled and sworn until February 3, 2020, the State's reindictments on June 26, 2019, and January 22, 2020, occurred before jeopardy attached. As Carbajal's proposed double-jeopardy objection would have been futile, trial counsel was not deficient for "failing" to assert it. *Puckett*, 907 F.2d at 527. Because Carbajal fails to overcome the deference accorded to the state court's denial of relief, 28 U.S.C. § 2254(d)(1) bars relief in this Court too.

### B. Section 2254(d) Precludes Relief on Carbajal's Prosecutorial-Misconduct Claims (Claims 5, 17, and 28).

#### (1) The Court of Criminal Appeals Reasonably Rejected Carbajal's Closing Argument Prosecutorial-Misconduct Claims (Claims 5 and 17).

In Claims 5 and 17, Carbajal alleges the prosecutor's misstatements concerning the evidence made during his closing argument deprived him of due process. Pet'r's Pet., ECF No. 1 at 19, 47. According to Carbajal, these misstatements "tainted the jury['s] decision making" and amounted to fabrication "so egregious that [they] permeated the trial atmosphere." *Id.* at 19, 47. In Claim 28, he maintains the charge in Count I that he used a brush to sexually assault the victim was not supported by the complainant's affidavit. *Id.* at 70.

The Supreme Court's *Darden* standard—applied to claims at the habeas stage that the prosecutor made improper comments during the trial stage—is "'the narrow one of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). "It is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id*. Instead, "[t]he relevant question is whether the prosecutors' improper

19

comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly*, 416 U.S. at 643). Factors a habeas court may consider include "whether the comments were 'invited by' or 'responsive' to defense arguments; whether curative instructions were given to the jury; and the weight of the evidence." *Id.* Critical to this analysis, the Supreme Court noted that "the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

In Claim 5, Carbajal alleges that the prosecutor misled the jurors by stating erroneously in closing argument that the victim claimed "he performed oral sex" on her during a "shower incident" when she was 12. Pet'r's Pet., ECF No. 1 at 19.

At trial, Jane testified that she performed oral sex on Carbajal during the "shower incident" when she was 12, as alleged in Count I of the indictment.

> VICTIM: I got out of -- after I took a shower, I got out and someone else, I believe, might have gone in. And [Carbajal] asked me to let go of my towel so I was naked. He turned me around and he was looking at, um, my body and touching me. And then he laid me on the bed and he stuck out his penis and he opened my legs and he tried to put it in and it hurt, so I pushed him off. And he tried a little again but since it hurt, he backed off. So he told me, "No, it's okay." And he told me that since I -- well, since it hurt so much, um, that -- and to be nice because it got off, for me to suck his dick.
>
> Q. How old are you? Do you remember? How old do you think you were when this was happening?
>
> A. 12.

Trial Tr., Vol. 7, ECF No. 14-10 at 72:6–72:20.

In closing, the prosecutor suggested that Carbajal performed oral sex on the 12-year-old Jane during the shower incident.

20

PROSECUTOR: She tells you before her period, she's -- so before 12, he laid her on the bed and he put his penis inside of her vagina and it hurt, and she kicked and said it hurt so bad. She says he tried it one more time, put it in again. He said he was going to try to open her up. She said it hurt so much that he agreed to stop. But since he couldn't penetrate her with his penis, she said that she -- that at that point, he insisted or said, "Okay. Well, now you have to perform oral sex." And she says, "That's how I remember that incident. He performed oral sex on me. I performed oral sex on him, and he touched me." We have every -- every element of aggravated sexual assault from that towel incident.

Punishment Phase Tr., ECF No. 14-12 at 55:24–56:12.

Given the numerous occasions of abuse disclosed during Carbajal's trial, the prosecutor's apparent mix-up is as unsurprising as it is benign. Whether the 12-year-old victim performed or received oral sex on that day is immaterial, as either supports Carbajal's conviction on Count I. The prosecutor's statement during closing argument—although inaccurate—did not so infect the trial with unfairness as to make the resulting conviction a denial of due process.

In Claim 17, Carbajal argues the prosecutor's comments in closing were delivered as facts but were not supported by the record. Pet'r's Pet., ECF No. 1 at 47. Specifically, he observes the prosecutor erred when she said:

[PROSECUTOR]: Let's look at the testimony that you heard from [the victim]. She told you this happened every day; every night she told you this happened. To the point that eventually she says: "You know what, as twisted as this sounds, I came up with a schedule in an attempt to get a break; to give myself a break. He kind of agreed to it; didn't follow it always." So let's give him the benefit of the doubt on this one.

Trial Tr., ECF No. 14-12 at 52:21–53:2.

[PROSECUTOR]: On Count I, it's the continuous where, again, the only reason to get stuck on the day is to just make sure we're talking about something that is happening to her when she was younger than 14. What do we have? She tells you that this thing was progressive, right? She tells you, "I don't remember. There's certainly no way I could remember every single day, so let me just talk. Let me just throw up very quickly" in a statement given to the police department "let

me just talk about what I know. I remember distinctly as a child how it started. I was 10 playing" -- Atari, I think. Ataris? Some video game on her dad's phone, and he took her hand and put it on his penis.

Trial Tr., ECF No. 14-12 at 54:8–54:20.

> [PROSECUTOR]: She tells you she remembers being in track, going to the restroom in the -- in the bathroom of the track locker room and saying, "I don't have my period." She's telling you exactly what she remembers. And I go and I tell him. He buys her a pregnancy test. And if she's lying, make the story worse. Make the story worse; say that she was pregnant. She says, "He tells me, 'It's okay. It's okay.'" I guess because he is confident at that point she was never going to tell a soul. "It's okay. We'll just get an abortion."

Trial Tr., ECF No. 14-12 at 59:23–60:7.

> [PROSECUTOR]: And you know what's found in his phone. Look at it. Look at it. The detective told you, "There was" – "There was so much there that we printed just a small showing of what was in his phone: father/daughter porn." So for the defense to say, "Nah, that's just what men do." I would say a bad word right here, but no way. BS. No way. No way do nonchild pedophiles search for daughter/father having sex together. That is beautiful proof in the pudding. Again, I get to sigh as a prosecutor. Absolutely, that is evidence of his guilt all day long. And we got it.

Trial Tr., ECF No. 14-12 at 64:11–64:22.

While Carbajal accuses the prosecutor of fabrication in these statements, each reflects the prosecutor's summation of the evidence. And, in each instance, the prosecutor's characterization of the victim's testimony finds support in the record.

> [VICTIM]: We would -- I would perform oral sex on him almost about every night and jerk him off, and he would help me sometimes because my hands would feel weak from pulling it for a long time. So he would help me, and he would grab my hand and pull it with him until he ejaculated.

> And it wasn't until I was -- it wasn't until I was around 15 that he finally penetrated me fully.

Trial Tr., ECF No. 14-10 at 76:11–76:19.

[VICTIM]: The idea of the schedule started -- I didn't want to do things every night. I just wanted to go to sleep like a normal kid. (Weeping).

And I knew I couldn't do it, but I would ask, "Can I have some days off where you don't do anything to me? Where I can just go to sleep and you don't touch me, and I don't have to touch you, and we don't have to do anything, and I could just sleep soundly?"

So he cooperated and he said, "Okay. We're going to do it Monday, Wednesday. You won't" -- and Thursday, Saturday, and Sunday.

I would only have two days off. I could choose two days out of the week where I could just go to sleep, call it a day, and go to sleep and didn't have to do anything.

So that's how the idea of the schedule started.

It didn't always happen. It didn't always follow.

Trial Tr., ECF No. 14-10 at 99:19–100:13.

[PROSECUTOR]: What would he tell you about the porn? How would he describe it for you?

[VICTIM]: (Weeping). That it was normal and that I should -- to learn things from there, do what they would do.

Q. Did he tell you -- did he tell you, specifically, that it was father/daughter porn, or what would he say?

A. It was stepfather and stepdaughter porn; that that was his favorite to look up on his phone.

Trial Tr., ECF No. 14-10 at 94:19–94:12.

[PROSECUTOR]: I want to take you back … to a time that you were late for your period -- where you didn't get your period and you were late, okay?

[VICTIM]: (Moving head up and down).

Q. Do you remember when that was? A. I was into sophomore year. … And I remember thinking … I hadn't gotten my period yet. So I went home and I told my

dad about it, that I hadn't gotten my period. So we went and bought a pregnancy test, and we took it at my grandma's house but I wasn't pregnant.

....

Q. Tell me about what he told you if it turned out positive, if you were actually pregnant.

....

A. (Weeping). So I was scared because what if I was pregnant, and it's my dad's? What would people say? But my dad just told me not to worry. If I was pregnant, we would just go get an abortion in Juarez and everything would be okay.

Trial Tr., ECF No. 14-10 at 105:10–106:23.

A prosecutor is not required by due process to turn a blind eye to a long history of sexual abuse, or to quote the witnesses verbatim. Rather, a prosecutor is obliged to meet a constitutional floor of due process, and relief is required in only "the most egregious" instances of prosecutorial misconduct "viewed in the context of the entire trial." *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987) (citations omitted).

The prosecutor's statements in this case were permissible for closing argument, as they reflected an accurate summation of the evidence, save for one inconsequential error. And, in each instance, the prosecutor's characterization of the victim's testimony finds support in the record. As a result, the prosecutor's statements during closing argument—consistent with the testimony of the victim—did not so infect the trial with unfairness as to make the resulting conviction a denial of due process.

Carbajal also complained of the prosecutor's statements during closing argument in his state habeas proceedings. Carbajal now attempts to overcome the deference the Court must give to

the Court of Criminal Appeals' rejection of his prosecutorial misconduct claims with none other than the rejected claims themselves.

To satisfy 28 U.S.C. § 2254(d), Carbajal must show that every fairminded jurist applying *Darden* would find not only that the prosecutor's comments were improper but also that they so infected his trial with unfairness as to deprive him of due process. And where, as here, "the 'precise contours' of the right remain 'unclear,' state courts enjoy 'broad discretion' in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014).

Under these circumstances, Carbajal cannot meet his burden of showing that the state-court adjudication on these claims (1) "'was contrary to' federal law then clearly established in the holdings of" the Supreme Court, (2) "'involved an unreasonable application of' such law," or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Richter*, 562 U.S. at 100 (quoting 28 U.S.C. § 2254(d)(1)–(2)). Accordingly, § 2254(d) precludes relief on Claims 5 and 17.

### (2) The Court of Criminal Appeals Reasonably Rejected Carbajal's Indictment-Related Prosecutorial-Misconduct Claims (Claim 28).

In Claim 28, Carbajal accuses the prosecutor of misconduct by obtaining an indictment alleging in Count I that he used a brush to sexually assault the victim. Pet'r's Pet., ECF No. 1 at 70. Carbajal argues that because there was no supporting affidavit for this claim, he was deprived of due process. But his claim is based in a misunderstanding of the grand jury procedure and, perhaps, state law, too.

According to the Texas Code of Criminal Procedure:

An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of

common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment …

Tex. Code Crim. Proc. Ann. art. 21.11 (West). Additionally, the Supreme Court explains that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

Count I of the indictment alleged that from on or about April 27, 2011, through April 1, 2015, Carbajal committed two or more acts of sexual abuse against a child younger than 14 years of age including:

> <u>Indecency with a Child</u>: By then and there intentionally or knowingly, with intent to arouse or gratify Carbajal's sexual desires, causing Jane to engage in sexual contact by causing Jane to touch Carbajal's genitals;
>
> <u>Aggravated Sexual Assault of a Child</u>: By then and there intentionally or knowingly causing the sexual organ of Jane to contact Carbajal's mouth;
>
> <u>Aggravated Sexual Assault of a Child</u>: By then and there intentionally or knowingly causing the penetration of the mouth of Jane by Carbajal's sexual organ;
>
> <u>Aggravated Sexual Assault of a Child</u>: By then and there intentionally or knowingly causing the penetration of the sexual organ of Jane by Carbajal's sexual organ; or
>
> <u>Aggravated Sexual Assault of a Child</u>: By then and there intentionally or knowingly causing the penetration of the sexual organ of Jane with a brush.

*Carbajal*, 659 S.W.3d at 174.

Count I gave Carbajal adequate notice of the offenses with which he was charged. Tex. Code Crim. Proc. Ann. art. 21.11 (West). It also enabled him to plead an acquittal or conviction

barred future prosecutions for the same offenses. *Hamling*, 418 U.S. at 117. It was therefore valid on its face.

Additionally, the Supreme Court has circumscribed a trial court's power to dismiss an indictment based on prosecutorial misconduct. *See, e.g., Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988) ("a district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant"). It has explained that an indictment's "validity … is not affected by the character of the evidence considered." *United States v. Calandra*, 414 U.S. 338, 345 (1974). Consequently, it has held that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *Id.* (citing *Costello v. United States*, 350 U.S. 359, 363 (1956); *Holt v. United States*, 218 U.S. 245 (1910)). And whatever accusations a defendant makes against his prosecutor, the Supreme Court has said his indictment may not be dismissed unless he was prejudiced thereby. *See, e.g., Nova Scotia*, 487 U.S. at 251; *United States v. Mechanik*, 475 U.S. 66, 73 (1986).

Because Count I was valid on its face in accordance with Texas law and Supreme Court precedent limits a lower court's power to dismiss an indictment due to prosecutorial misconduct, the Court of Criminal Appeals had no precedent to contravene or unreasonably apply when it denied Carbajal relief on this claim. Accordingly, 28 U.S.C. § 2254(d) precludes relief on Claim 28.

    **C. Section 2254(d) Precludes Relief on Carbajal's Double-Jeopardy Claims (Claims 7 and 25).**

In Claims 7 and 25, Carbajal asserts double jeopardy violations. In Claim 7, he contends that in Count I—the indecency with a child claim—is subsumed by two of the aggravated sexual assault claims creating double jeopardy. Pet'r's Pet., ECF No. 1 at 24. In Claim 27, he maintains that Count I and Count XII alleged the same aggravated sexual assault which he describes as the "towel incident." *Id*. at 64.

The Fifth Amendment guarantee against double jeopardy—enforceable against the States through the Fourteenth Amendment—"protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 715 (1969); U.S. Const. amend. V ("No person shall … be subject for the same offense to be twice put in jeopardy of life or limb."). To determine "sameness," the Supreme Court established the *Blockburger* test: "If each different statutory offense requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *United States v. Marden*, 872 F.2d 123, 125 (5th Cir. 1989) (citation omitted). Further, "[t]he *Blockburger* test has nothing to do with the evidence presented at trial. It is concerned solely with the statutory elements of the offenses charged." *Davis v. Herring*, 800 F.2d 513, 517 (5th Cir. 1986) ("the *Blockburger* test is to be applied to the elements of proof required by the statute and not to the actual evidence or proof adduced at trial in a case").

The State prosecuted Carbajal for four offenses—(1) continuous sexual abuse of a child under 14, (2) indecency with a child by sexual contact, (3) sexual assault of a child, and (4) sexual assault—spread over thirteen counts. *Carbajal*, 659 S.W.3d at 173–75. Count I alleged that from on or about April 27, 2011, through April 1, 2015, Carbajal committed two or more acts of sexual abuse against a child younger than 14 years of age. *Id*. at 174. The alleged acts of sexual abuse

included Carbajal causing (1) the victim to touch his genitals, (2) the victim's sexual organ to contact his mouth, (3) the penetration of the victim's mouth by his sexual organ, (4) the penetration of the victim's sexual organ by his sexual organ, and (5) the penetration of the victim's sexual organ with a brush. *Id*. Count XII alleged that on or about April 28, 2011, Carbajal did then and there intentionally and knowingly, with the intent to arouse and gratify the sexual desire of defendant, engaged in sexual contact with a child younger than 17 years of age by touching her breast. *Id.*

Prior to trial, Carbajal moved the trial court to order the State to elect which incident of the same act of sexual assault it would rely on for a conviction. Mot. to Quash, ECF No. 14-2 at 70. On the same basis, his counsel moved the trial court to order the State to elect which count it would proceed on. Mot. to Order State to Elect, ECF No. 14-2 at 72. Overruled at trial, Carbajal complained on direct appeal of the trial court's error and the double-jeopardy violations that followed. *Carbajal*, 659 S.W.3d at 183–85.

Regarding Count I, each different allegation required proof of a fact that the other did not. It satisfied the *Blockburger* test. Regarding Count XI, the Eighth Court of Appeals reversed to acquit Carbajal of Count XI due to a double-jeopardy violation. *Id*. at 185. Regarding Count XII:

> … which alleged a charge of indecency with a child by touching the breast of a child, the continuous abuse statute specifically excludes such charge from the predicate offenses allowed to support a conviction under the continuous abuse statute. See TEX. PENAL CODE ANN. § 21.02(c)(2). Because this type of indecency with a child offense is not a predicate offense allowed to be used to charge the offense of continuous sexual abuse of a child, the State was entitled to prosecute this non-predicate offense separately and independently, even though it occurred within the same time frame as that alleged in the continuous-sexual-abuse-of-a-child charge.

*Id.*

Then, in state habeas proceedings, Carbajal added double jeopardy and election claims to his list of grounds for relief. State Writ Appl., ECF No. 14-34 at 211, 233. But, this time, to no avail. Action Taken, ECF No. 14-37 at 1–3 ("This is to advise that the Court has denied without written order the application for writ of habeas corpus.").

Now in this Court, Carbajal seeks another round of review by dressing his double-jeopardy claims up as ineffective-assistance and trial-court-error claims. *See, e.g.*, Pet'r's Pet., ECF No. 1 at 13–14, 17, 20, 24, 31, 33, 35, 62, 64, 66, 72–73. But for each rendition, Carbajal fails to show that the state courts' denial of relief contravened Supreme Court precedent or the facts in the record. Accordingly, 28 U.S.C. § 2254(d) precludes relief on Claims 7 and 25.

### D. Section 2254(d) Precludes Relief on Carbajal's Insufficient-Evidence Ineffective-Assistance-of-Trial-and-Appellate-Counsel Claim (Claim 9).

In Claim 9, Carbajal asserts his trial and appellate counsel were ineffective for failing to object and assert that there was insufficient evidence to convict on Counts II and III. Pet'r's Pet., ECF No. 1 at 29.

In determining whether evidence is legally sufficient to support a conviction, a court assesses "whether the record evidence could reasonably support" the jury's verdict. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (finding no meaningful distinction between the legal and factual sufficiency standards and therefore no justification for retaining both standards) (citing *Jackson*, 443 U.S. at 319). A court views "evidence in the light most favorable to the government and gives the government the benefit of all reasonable inferences and credibility choices." *United States v. Barnes*, 803 F.3d 209, 216 (5th Cir. 2015) (quoting *United States v. Williams*, 507 F.3d 905, 908 (5th Cir. 2007)).

When reviewing sufficiency-of-the-evidence claims on direct appeal, a Texas court is precluded from reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). It must presume the fact finder resolved any conflicting inferences in favor of the verdict. *See* Tex. Code Crim. Proc. Ann. Art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). And it measures sufficiency-of-the-evidence claims by the elements of the offense as defined by the jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Counts II and III both charged Carbajal with sexual assault on a child. Count II alleged that "[o]n or about April 27, 2015, Carbajal did then and there intentionally and knowingly cause the penetration of the sexual organ of Jane, a child younger than 17, by Carbajal's sexual organ." Count III alleged that "[o]n or about April 28, 2015, Carbajal did then and there intentionally and knowingly cause the penetration of the sexual organ of Jane, a child younger than 17, with a brush."

A person commits sexual assault on a child if "the person intentionally or knowingly… causes the penetration of the anus or sexual organ of a child by any means." Tex. Penal Code Ann. § 22.011 (West). "'Child' means a person younger than 17 years of age." *Id.*

The victim testified, among other things, that Carbajal began penetrating her vagina with his entire penis when she was 15 years old. Trial Tr. 14-10 at 76:17–76:19 ("it wasn't until I was around 15 that he finally penetrated me fully"). On multiple occasions when Carbajal was unable to become erect, he penetrated Jane's vagina with her and her brothers' pink and black hairbrush from Dollar Tree. *Id* at 104:3–104:11 ("So after being there for a long time and not being able to

get him up, he asked me to bring my brush … and he would stick it into my vagina instead of his

penis if he couldn't get it up while I would jerk him off.").

At the end of the State's case-in-chief, Carbajal's trial counsel moved for a directed

verdict:

> I believe it's impossible under the evidence in this case to be able to determine
> whether the jury is reaching a unanimous verdict to any of these specific counts;
> and therefore, based on due process grounds, as well as the unanimous --
> unanimous verdict grounds as -- of the U.S. Constitution, as well as the Texas
> Constitution, because of the inability to really know whether they're going to be
> unanimous and the jury -- whether the jury's verdict will be unanimous, we're
> moving that you direct a verdict against the State and dismiss the indictments in
> Counts II through XIV.
>
> THE COURT: Your motion for directed verdict on Counts II through XIV
> is denied.

Trial Tr., ECF No. 14-11 63:1–63:13.

Carbajal was convicted of Counts II and III, respectively, for penetrating Jane's sexual

organ with his own "on or about" April 27, 2015, and then with a brush "on or about" April 28,

2015, with both occurring when Jane was younger than 17. Pet'r's Pet., ECF No. 1 at 29.

As the Court of Criminal Appeals adjudicated the instant claims in its state habeas

proceedings, double deference is due: first to counsel, then to the Court of Criminal Appeals.

Carbajal asserts that trial counsel failed to object to Counts II and III based on insufficient

evidence. But the record reasonably supports the jury's verdict. *Jackson*, 443 U.S. at 318. And it

refutes Carbajal's allegations, as it shows that trial counsel moved for a directed verdict on Counts

II through XIV when the State rested its case-in-chief. Trial Tr., ECF No. 14-11 63:1–63:13. As

trial counsel raised and preserved the insufficient-evidence objection at his trial, Carbajal cannot

now show his counsel's performance was somehow deficient or prejudiced his cause.

32

Carbajal goes on to complain that he was deprived of effective assistance of appellate counsel for the same reason. Pet'r's Pet., ECF No. 1 at 29. Although his appellate counsel did not raise a point of error asserting the evidence was insufficient to convict on Counts II and III, 28 U.S.C. § 2254(d)(1) bars relief anyway.

"[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). In this case, Carbajal's appellate counsel raised points of error which were relatively stronger than his insufficient-evidence claim—which was arguably entirely frivolous. Having failed to demonstrate any merit to his claim, Carbajal fails to meet his burden of identifying issues that are clearly stronger than those raised by appellate counsel. *Id.* at 286.

This record supports the appellate court's finding that "the evidence presented at trial shows . . . acts of sexual abuse being committed against Jane on an ongoing basis, after April 2015, when she had already reached her fourteenth birthday, and continued thereafter through July 26, 2018." *Carbajal*, 659 S.W.3d at 184.

As Carbajal fails to identify any clear and convincing evidence rebutting this finding, this Court is bound by it. 28 U.S.C. § 2254(e)(2). When considered alongside the victim's very specific testimony, the state court's finding that Carbajal's acts of abuse were ongoing during the relevant time provides more than enough evidence for a rational juror to find that the alleged penetrations in Counts I and II occurred at least once when the victim was between 14 and 17 years of age.

As the Court of Criminal Appeals implicitly found when it denied habeas relief, Carbajal's proposed claim would have been futile on appeal. Because the Court of Criminal Appeals' rejection of Claim 9 is consistent with *Smith* and *Strickland*, this Court must let it stand.

### E. Section 2254(d) Precludes Relief on Carbajal's Trial-Court-Error Claims on the Denial of His Motion to Require the State's Election (Claims 12 and 23).

In Claims 12 and 23, Carbajal asserts that he was deprived of due process when the trial court erred in declining to require the State to elect the specific acts it was relying on to obtain convictions for Counts I, IV, VIII, and XIII. Pet'r's Pet., ECF No. 1 at 35, 60.

"[N]otice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, … are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948). Consequently, "when one particular act of sexual assault is alleged in the indictment, and more than one incident of that same act of sexual assault is shown by the evidence, 'the State must elect the act upon which it would rely for conviction.'" *Owings v. State*, 541 S.W.3d 144, 150 (Tex. Crim. App. 2017) (quoting *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988)). And "once the State rests its case in chief, on the timely request of a defendant 'the trial court must ... order the State to make its election.'" *Phillips v. State*, 193 S.W.3d 904, 909 (Tex. Crim. App. 2006) (quoting *O'Neal*, 746 S.W.2d at 772).

When conducting a constitutional harm analysis of an election error, the reviewing court "must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App.

Proc. 44.2(a). This determination is made after analyzing the error in the context of the following four purposes underlying the election requirement:

> • to protect the accused from the introduction of extraneous offenses;

> • to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty;

> • to ensure unanimous verdicts; that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred;

> • and to give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend.

*Phillips*, 193 S.W.3d at 910.

Addressing Carbajal's claim that the trial court erred in declining to require the State's election, the Court of Appeals applied Texas law and found no error, save for one harmless error:

### a. Count I

"The Court of Criminal Appeals has held that an election is not required under a charge of continuous sexual abuse of a child under the age of fourteen." *Carbajal*, 659 S.W.3d at 187 (citing *Price*, 434 S.W.3d at 609).

### b. Count XIII

"[T]he evidence did show two separate and distinct instances of oral sex on or about July 26. *Id.* at 188. … Because each of the four purposes of the election requirement were met as to Count XIII, we find that the trial court's error in not requiring the State to elect was harmless." *Id.* at 189.

### c. Counts II through V, VII through X, XII, and XIV [including Counts IV and VIII]

"The acts Jane described which supported the charges under these remaining counts amount to generic, undifferentiated, ongoing acts of sexual abuse on a repeated basis. In these situations, the Court of Criminal Appeals has held that even if elections must be made, any harm in not requiring an election would be harmless

under the constitutional-harm standard." *Id*. at 189 (citing *Dixon*, 201 S.W.3d at 732–36).

As these claims were adjudicated on the merits on direct appeal, Carbajal must establish not only that the state court erred in rejecting his claims, but that it contravened the Supreme Court's holdings in so doing. 28 U.S.C. § 2254(d)(1).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Thus, trial court error "does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the due process clause." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). Only those errors which violate "fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency" will render a trial fundamentally unfair. *Dowling v. United States*, 493 U.S. 342, 353, (1990) (quotation marks and citations omitted); *see also Menzies v. Procunier*, 743 F.2d 281, 288 (5th Cir. 1984) ("An unfair trial has been characterized as one that has been 'largely robbed of dignity due a rational process'") (quoting *Houston v. Estelle*, 569 F.2d 372, 383 (5th Cir. 1978)).

Moreover, on federal habeas review of state court convictions, a federal harmless error standard applies. *Brecht*, 507 U.S. at 637–38; *see also Fry v. Pliler*, 551 U.S. 112, 2328 (2007) (holding the federal harmless error *Brecht* standard applies to § 2254 proceedings). Therefore, to be actionable, the trial court error must have "'had substantial and injurious effect or influence in

determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Carbajal was accused of penetrating the victim's mouth with his sexual organ from on or about April 27, 2011, through April 1, 2015, when she was younger than 14 (Count I), on or about April 27, 2015 (Count IV), on or about April 27, 2017 (Count VIII), and on or about July 26, 2018 (Count XIII). *Carbajal*, 659 S.W.3d at 174–75. Hence, he was given notice of specific charges against him and the chance to be heard at trial on the issues raised by those charges. *Cole*, 333 U.S. 201. Carbajal's claims that the trial court erred in declining to require the State to elect the specific acts upon which it relied for the convictions were rejected by the Court of Appeals, save for one it found harmless.

Carbajal fails identify any error that robbed his trial of the dignity due process requires, much less one that "'had substantial and injurious effect . . . in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637. And again, as he fails to establish that the state court contravened or unreasonably applied any Supreme Court holding in rejecting his claim, 28 U.S.C. § 2254 precludes relief in on claims 12 and 23.

### F. Section 2254(d) Precludes Relief on Carbajal's Trial-Court-Error Claims for the Jury Charge and Admission of Extraneous Evidence (Claims 13, 14, 21, and 22).

In Claims 13, 14, 21, and 22, Carbajal argues that he was deprived of due process when the trial court submitted an erroneous charge to the jury and admitted extraneous evidence. Pet'r's Pet, ECF No. 1 at 37–38, 40, 56, 58. In Claim 13, he observes that the trial court defined "on or about" to mean "any date prior to the presentment of the indictment." *Id.* at 37. But he notes that the indictment, which was returned on January 22, 2022, alleged in Count I that he engaged in the

continuous sexual abuse of the victim before April 1, 2014, when she was younger than 14 years old. *Id.* He argues that the instruction required an election on the conduct relied on for each of the convictions on Counts II through XIV, which alleged he engaged in sexual acts with the victim "on or about" various dates after she had attained specified ages. *Id.* In Claim 14, he adds that the "on or about" language allowed the evidence to be applied in any count instead of to each individual count. *Id.* at 40.

In Claim 21, he asserts that the Court of Appeals erred in its analysis of harm caused by the statement, which was extraneous evidence, that "[i]f she was [pregnant], he would take her to Juarez to get an abortion." *Id.* at 58. He maintains the victim never claimed that she was pregnant. *Id.* In Claim 22, he contends that the Court of Appeals erred in its analysis of the harm caused by the trial court's failure to require the State to elect which evidence supported his convictions and therefore permitted the State to present extraneous evidence. *Id.* at 60.

### (1) The Court of Criminal Appeals Reasonably Rejected Carbajal's Trial-Court-Error Claims for the Jury Charge (Claims 13, 14).

The Supreme Court in "*Boyde* sets the standard for reviewing a claim of jury-charge error." *Sprouse v. Stephens*, 748 F.3d 609, 618 (5th Cir. 2014) (citing *Boyde v. California*, 494 U.S. 370 (1990)). The *Boyde* Court explains that "the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde*, 494 U.S. at 380. It observes that:

> [1] Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. [2] Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Id.* at 380–81. Moreover, it concludes "'a single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge.'" *Id.* at 378 (quoting *Boyd v. United States*, 271 U.S. 104, 107 (1926)).

Count I alleged that "from on or about April 27, 2011, through April 1, 2015, Carbajal committed two or more acts of sexual abuse against Jane, a child younger than 14 years of age." *Carbajal*, 659 S.W.3d at 174. The remaining counts alleged specific acts of sexual assault on the victim "on or about" specified dates. A jury applying a commonsense understanding of the trial court's instruction concerning the definition of the phrase "on or about" would logically conclude that it could *not* apply the evidence of continuous sexual abuse of the victim before the age of 14 to the other offenses alleged in the indictment. The fact that Carbajal perceives a negative inference from one definition of his jury charge does not demonstrate that his jury was confused about, and precluded from following, the comprehensive jury charge.

The Court of Criminal Appeals reasonably rejected Carbajal's Claims 13 and 14.

### (2) The Court of Criminal Appeals Reasonably Rejected Carbajal's Trial-Court-Error Claims for the Admission of Extraneous Evidence (Claims 21, and 22).

In Claims 21 and 22, Carbajal alleges that the trial court violated Texas evidentiary rules and his constitutional right to due process when it admitted the victim's testimony that Carbajal "would take her to Juarez to get an abortion" if she was pregnant. Pet'r's Pet, ECF No. 1 at 56, 58.

A petitioner's challenges to the application of state law evidentiary rules form "no part of a federal court's habeas review of a state conviction. We have stated many times that federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quotation omitted). And when a petitioner alleges the trial court's ruling violated his

constitutional rights, he must show two things to prevail. First, that the error was "of such a magnitude or so egregious that it rendered the trial fundamentally unfair." *Gonzalez v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011). Second, that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776).

Carbajal's claim was adjudicated on direct appeal. *Carbajal*, 659 S.W.3d at 190–92. Accordingly, he must show that the state court's denial of relief contravened or unreasonably applied the Supreme Court's holdings or was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

In rejecting Carbajal's claim, the Court of Appeals summarized the relevant facts as follows:

> At trial, Jane testified that, during her sophomore year of school, she suddenly realized she had not yet had her period. After telling Carbajal about her concern, he took her to buy a pregnancy test, which came back negative. The prosecutor then asked the following question, drawing an immediate objection from the defense:
>
>> [Prosecutor]: Tell me about what he told you if it turned out positive, if you were actually pregnant.
>>
>> [Defense counsel]: Your Honor, I'm going to object to the prejudicial nature of this testimony.
>>
>> THE COURT: Overruled.
>>
>> [Defense counsel]: It violates Rule 403 and 404.
>>
>> THE COURT: Overruled.
>
> Jane then described, while weeping, that she was scared and worried about being pregnant by Carbajal. She worried about what people would say. Describing what Carbajal said to her, Jane testified, "But my dad just told me not to worry. If I was

pregnant, we would just go get an abortion in Juarez and everything would be okay."

*Carbajal*, 659 S.W.3d at 190. Applying state law, the Court of Appeals determined there was no abuse of discretion in admitting the testimony:

> Article 38.37 of the Texas Code of Criminal Procedure authorizes the admission of other-acts evidence committed by the defendant against the child who was the victim of the alleged offense for which the defendant is on trial. Tex. Code Crim. Proc. Ann. art. 38.37. Article 38.37 supersedes the application of Rule 404 of evidence. *Id.* at 38.37(1)(b). Because it supersedes Rule 404, article 38.37 allows the jury to consider relevant matters, including evidence of the defendant's character and acts performed in conformity with that character. *Id.* at 38.37(2)(b).

> Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Tex. R. Evid. 403. Even where evidence is found to be relevant under article 38.37, the court has an obligation to weigh the probative value of the evidence against the unfair prejudice of its admission. *See Montgomery v. State*, 810 S.W.2d 372, 289 (Tex. Crim. App. 1990). Factors to be considered in this balancing test include:

>> (1) [H]ow compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable, (2) the potential the other offense evidence has to impress the jury in some irrational but nevertheless indelible way, (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense, and (4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., whether the proponent has other probative evidence available to him to help establish this fact, and whether the fact related to an issue in dispute.

*Id.* at 190–91 (quoting *Isenhower v. State*, 261 S.W.3d 168, 178 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Santellen v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (internal quotation marks omitted).

Carbajal fails to show that the trial court erred in its admission of his abortion reassurances to the victim's pregnancy scare. He fails to show that the admission substantially impacted his

41

verdict or infected his trial with fundamental unfairness. *See Brecht*, 507 U.S. at 637; *Estelle*, 502 U.S. at 67–68. As the state court's rejection of Claims 21 and 22 is consistent with Supreme Court precedent, 28 U.S.C. § 2254(d) requires this Court to deny relief, too.

### G. Section 2254(d) Precludes Relief on Carbajal's Ineffective-Assistance-of-Counsel Claims Based on Counsel's Failure to Adequately Challenge the State's Case (Claims 15, 18, 19, 20).

In Claims 15, 18, 19, and 20, Carbajal alleges he was deprived of constitutionally effective assistance when his trial counsel failed to conduct additional DNA testing, impeach the State's witnesses, present exculpatory evidence, and call a witness. Pet'r's Pet., ECF No. 1 at 42–43, 49–50, 52, 54.

During the State's case-in-chief, the victim testified that Carbajal demanded she perform oral sex on him on July 26, 2018. *Carbajal*, 659 S.W.3d at 176. She claimed that when Carbajal ejaculated into her mouth, she spit the semen into a sock and threw it on the floor near the bedroom closet. *Id.* She added that she went to the police later that day. *Id.*

A forensic scientist testified that he conducted DNA analysis on a sock retrieved from Carbajal's bedroom on the day of his arrest, July 27, 2018. *Id.* at 178. The scientist explained that testing revealed the semen found on the sock was "422 septillion times more likely" to have originated from Carbajal than it was to have come from an unrelated, unknown individual. *Id.*

Carbajal then called his own DNA expert who testified that he would have expected to see significant DNA from the victim's saliva on the sock retrieved from Carbajal's bedroom. *Id.* The expert observed that the State's DNA report did not show any definitive contribution from the victim on any of the DNA analyzed from the sock. *Id.* On cross-examination, the expert

acknowledged that the State's DNA report showed there was a second contributor on one of the stains analyzed from the sock. *Id.*

### (1) The Court of Criminal Appeals Reasonably Rejected Carbajal's Trial-Counsel-Error Claims Based on the Lack of Additional DNA Testing (Claim 15).

In Claim 15, Carbajal alleges that his trial counsel was ineffective for failing to conduct an additional round of DNA testing on the sock. Pet'r's Pet., ECF No. 1 at 42. He argues that he was prejudiced because the jury did not have a full analysis of the DNA. *Id.*

During Carbajal's trial, the victim testified that she spit Carbajal's semen into a sock and threw it near his bedroom closet, police recovered the sock where the victim said it would be located the following day, and a DNA expert determined that the semen found on the sock was "likely" from Carbajal. Critically, Carbajal only speculates that additional DNA testing might have provided exculpatory evidence. And he does not show that it would have changed the outcome of his trial, considering the significant evidence against him.

Carbajal's conclusory allegations and speculation concerning the ineffective assistance of his counsel do not raise a constitutional issue in a federal habeas proceeding and are insufficient to establish prejudice. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983)). "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial, we [can find] no merit to these [claims]." *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992). Accordingly, Carbajal's ineffective-assistance-of-counsel claim lacks merit. As a result, the Court of Criminal Appeals' rejection of Claim 15 was reasonable and consistent with *Strickland*. Relief is not warranted here.

**(2) The Court of Criminal Appeals Reasonably Rejected Carbajal's Trial-Counsel-Error Claims Based on the Failure to Impeach the Victim's Testimony with a Recording of a Prior Child Protective Services Interview (Claim 15).**

In Claims 18 and 19, Carbajal alleges trial counsel was ineffective for failing to introduce a Child Protective Services video from an unrelated investigation conducted years prior in which his four stepchildren, including the victim, denied he had ever abused them. Pet'r's Pet., ECF No. 1 at 49–50, 52. He argues that the video would have undermined the credibility of the victim in the guilt phase of trial, as well as the credibility of two other stepchildren—Jose Gutierrez and Emanuel Carbajal—in the punishment phase of trial. *Id.* at 49.

At a pretrial motions hearing, trial counsel informed the trial court that he had a Child Protective Services video on a compact disc (CD) from a prior unrelated investigation from several years before in which the victim, Gutierrez, and Emanuel Carbajal all denied that they were abused by Carbajal. Mot. Hearing Tr, ECF No. 14-7 at 83:26–87:2. While uncertain whether he would use the video, trial counsel explained that "if the children testify, I'm going to use that -- or at least attempt to use those prior statements to impeach and/or just to get confirmations that that's what they told the CPS workers." *Id.* at 93:23–84:2.

The trial court expressed doubt about the admissibility of the video or a transcript of its contents, and the State noted their future objection:

> [PROSECUTOR]: So I'm going to go back to the Rules of Evidence. These CPS records are CPS records. If he wants to impeach a witness -- any witness on what they may or may not have said, these are not signed witness statements that were adopted by witnesses. These are CPS workers.
>
> So the proper avenue he should be prepared for if he wants to impeach witnesses on what they told somebody else, is he better bring that somebody else. It's certainly not through a CPS record that a witness would not have an

> opportunity to look at, correct, deny -- yes/no. He better -- that's the Rules of Evidence.
>
> It wouldn't be throwing in a CPS document that a witness never had an opportunity to adopt, confirm, make changes. It would be a human being, "Did this person tell you that?" It's not a document that a witness would never have an opportunity to look at.
>
> So I'll simply -- that will be my objection if we get to that point. So I hope he's prepared to do it legally through the Rules of Evidence.

*Id.* at 85:23–86:18.

Because trial counsel ultimately decided not to proffer the CPS video interviews or the transcripts of the interviews, Carbajal calls his counsel deficient. But again, *Strickland* and 28 U.S.C. § 2254(d)(1) require more than a conclusory allegation.

From the record, then, it appears that a motion to admit the video interviews would have been futile. Indeed, the trial court clearly stated, "I just don't see any admissibility of those documents." *Id.* at 85:9–85:10.

Although Carbajal faults trial counsel for failing to have the evidence admitted, he does not explain how he could have obtained its admission, with the State's promised objections and trial court's likely ruling. As the record underscores the likely futility of any attempt to admit the interviews, trial counsel's decision to abandon offering the evidence was professionally reasonable. Further, without the videos or an explanation from trial counsel, the presumption that counsel's ultimate decision was strategic simply cannot be rebutted. *See Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006) (quoting *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir.2004) (citations and internal quotation marks omitted) (explaining that a "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless

it is so ill chosen that it permeates the entire trial with obvious unfairness."). As Carbajal fails to rebut the presumption that counsel was acting strategically, his allegations of deficiency do not survive *Strickland*.

Additionally, Carbajal cannot establish a reasonable probability of a different result had the trial court admitted the videos. Given the children's ages and the circumstances under which the interviews were conducted, credibility concerns abound. Further, the jury heard from the victim that she concealed the abuse from age 10 to 17—but excused her longstanding secrecy—to find her credible enough to convict Carbajal. Given the evidence corroborating her testimony of the abuse, the jury would have convicted Carbajal, notwithstanding any explicit denial years prior. As a result, Carbajal also fails to establish prejudice for his claim.

The Court of Criminal Appeals' rejection of this claim in state habeas proceedings implicates *Strickland* and 28 U.S.C. § 2254(d)(1)'s deferential review. *See Richter*, 562 U.S. at 105. And again, their tandem application precludes the relief Carbajal seeks.

The state court's rejection of Claims 18 and 19 was reasonable and consistent with clearly established federal law. Section 2254(d), therefore, requires this Court to follow suit in denying relief on these claims.

### (3) The Court of Criminal Appeals Reasonably Rejected Carbajal's Trial-Counsel-Error Claims Based on the Failure to Call a Witness (Claim 20).

In Claim 20, Carbajal alleges that his trial counsel provided ineffective assistance when he failed to call his niece, Getsemani Alvarado, who he claims could have testified about the victim's plans to leave home before the July 26, 2018, incident which resulted in his arrest. Pet'r's Pet., ECF No. 1 at 54. He adds that Alvarado agreed to testify and was waiting outside the courtroom to

testify. *Id.* He claims Alvarado would have impeached the victim's testimony that she had not

planned to move out of Carbajal's home by explaining the victim had made plans with Alvarado to

look for an apartment. *Id.*

During trial, the victim testified that she had not planned to leave:

[DEFENSE COUNSEL]. … [I]sn't it true that you had already been making plans to leave?

A. Not actual plans, no.

….

Q. Okay. Now, you had a phone during this period, right?

A. Yes, sir.

Q. Okay. And in that phone, you actually had a calendar, didn't you?

A. Yes.

….

Q. Okay. Your phone download reflects that you were making attempts to move into an apartment before this day, right?

A. Hmm, I guess.

Q. Okay. So, yeah. I mean, at least on two occasions, I think, based on what -- if I'm looking at your calendar correctly, you had actually gone to an apartment with somebody else, apparently, to look at the apartment -- at least that's what your calendar shows.

A. No, sir.

Q. Okay. Well, it will be reflected in there, but you don't remember doing that?

A. I didn't go check out apartments, sir, no.

….

Q. The calendar also reflects that you had put into your calendar that you needed to pack your clothes, before this day. Do you remember that?

….

A. No.

Q. Okay. I'm -- and I'm not trying to trick you. The jury's going to see the data.

A. That's fine.

Q. And I'm just seeing if you remember.

A. No, sir.

Trial Tr., ECF No. 14-10 at 137:5–139:22.

Carbajal's counsel adequately challenged the victim's credibility when she asserted that she had not planned to leave home. He made the phone data available to the jury. Calling Alvarado to testify on this issue would have added little if nothing to the evidence.

Furthermore, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; and that a petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

As a result, the Court of Criminal Appeals' rejection of Claim 20 was reasonable and consistent with *Strickland*.

**H.  Section 2254(d) Precludes Relief on Carbajal's Closing-Argument Ineffective-Assistance-of-Counsel Claim (Claim 16).**

In Claim 16, Carbajal argues he was deprived of constitutionally effective assistance when his trial counsel failed to object to the prosecutor's "inflammatory misquotes" during closing argument in the guilt-innocence phase of his trial. Pet'r's Pet., ECF No. 1 at 45. He contends his trial counsel should have objected when the Prosecutor claimed:

> (1) "You know as twisted as it sounds …"; (2) "he kind [of] agreed to it"; (3) "let me just throw up very quickly"; (4) "says she was pregnant"; (5) "we'll just go get an abortion"; [and] (6) "absolutely that's evidence of guilt all day long."

*Id*. Carbajal presumes trial counsel overlooked the objections due to "inattention." *Id.*

"There are four permissible areas of jury argument: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) an answer to the argument of opposing counsel, and (4) a plea for law enforcement." *Lange v. State*, 57 S.W.3d 458, 466 (Tex. App.—Amarillo 2001) (citing *Campbell v. State*, 610 S.W.2d 754, 756 (Tex. Crim. App.1980).

The Court has already determined that the prosecutor's statements were permissible for closing argument, as they reflected an accurate summation of the evidence, save for one inconsequential error. And, in each instance, the Court has noted that the prosecutor's characterization of the victim's testimony was supported by the record. As a result, the Court found the prosecutor's statements during closing argument—consistent with the testimony of the victim—did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. *Darden*, 477 U.S. at 181

And even if the prosecutor's statements were inflammatory or unsupported by the evidence, Carbajal fails to overcome the presumption that counsel had a strategic basis for withholding objections—perhaps to avoid drawing additional attention to the subject matter. Further, Carbajal fails to affirmatively show a reasonable probability that, but for the missed objections, the result of the trial would have been different.

Having again failed to establish both of *Strickland*'s essential elements, the state court's rejection of Claim 16 was not only consistent with clearly established federal law but also required by it. Once again, 28 U.S.C § 2254(d) precludes relief for Claim 16.

## I. Section 2254(d) Precludes Relief on Carbajal's Claims Challenging the Constitutionality of Texas' Continuous Sexual Assault Statute (Claims 30 & 31).

In Claims 30 and 31, Carbajal alleges that Texas Penal Code § 21.02 is unconstitutional because it does not require jurors to unanimously agree on which predicate offenses the accused committed for a conviction. Pet'r's Pet., ECF No. 1 at 75.

Section 21.02 provides that a person "17 years of age or older" commits an offense of continuous sexual abuse of a young child if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" on a child younger than 14 years of age. Tex. Penal Code Ann. § 21.02(b). It defines "act of sexual abuse" to include sexual assault under §22.011, aggravated sexual assault under § 22.021, and indecency with a child under § 21.11(a)(1), "other than by touching . . . the breast of a child." *Id.* § 21.02(c). And finally, for a conviction, the jurors "are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed" but

"must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *Id.* § 21.02(d).

The Sixth Amendment's right to a jury trial requires a unanimous verdict to convict a defendant of a serious offense. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). Applying this protection to the states, the Supreme Court has struck down Louisiana and Oregon laws that permitted conviction by a nonunanimous, 10-2 jury verdict. *Id.*

"The question … is whether the specific acts of sexual abuse enumerated in the statute are elements of the offense or merely … the manner and means by which one of the elements is accomplished." *Favors v. State*, No. 12-24-00118-CR, 2025 WL 1463301, at *8 (Tex. App. May 21, 2025). "If they are elements, then jury unanimity is a requirement; if they are manner and means, then jury unanimity is not required." *Id.*

Texas courts of appeals have held that the sexual abuse acts listed in Texas Penal Code § 21.02(c) are not elements of the offense. *Holton v. State*, 487 S.W.3d 600, 606 (Tex. App.–El Paso 2015, no pet.). Instead, they have held the elements of the offense on which the jury must agree unanimously are the defendant (1) 17 years of age or older (2) committed two or more acts of sexual abuse (2) on a child younger than 14 (4) during a period of 30 or more days in duration. Tex. Penal Code Ann. § 21.02(b). Consequently, the State must show that the defendant engaged in a "pattern of behavior or the series of acts," and jury unanimity is not required regarding which of the particular acts the defendant committed. *See Holton*, 487 S.W.3d at 606; *see also Pollock v. State*, 405 S.W.3d 396, 404 (Tex. App.–Fort Worth 2013, no pet.); *McMillian v. State*, 388 S.W.3d 866, 872 (Tex. App.–Houston [14th Dist.] 2012, no pet.).

As a result, the Court of Appeals considered *Ramos*' implications in Carbajal's case and explained that it had none:

> *Ramos v. Louisiana* abolished the practice—only utilized in Louisiana and Oregon—of allowing a criminal conviction by a 10-2 jury verdict. Because Texas does not allow such a verdict for a criminal conviction—and, of course, that is not what happened in this case—we conclude that *Ramos* has no impact on *Holton*,[5] which concludes that § 21.02 does not allow for a non-unanimous verdict. As the State points out, and we agree, *Holton's* key holding remains intact, even in light of *Ramos*:
>
>> [I]n continuous sexual abuse cases, a defendant's constitutional right to a unanimous jury verdict is fulfilled by requiring the jury to agree on the key element of the offense, i.e., that the defendant committed a 'series' of acts within a certain period of time, and that jury unanimity is not required regarding which of the particular acts of sexual abuse the defendant committed. Because the jury in [the defendant's] case was properly instructed on this point, we reject [his] argument that he was deprived of his constitutional right to a unanimous verdict, and we once again uphold the constitutionality of the continuous sexual abuse statute in this context.

*Carbajal*, 659 S.W.3d at 182 (quoting *Holton*, 487 S.W.3d at 608). Therefore, the Court of Appeals determined "there was no due process violation arising from Count I, that Carbajal was convicted of that count by a unanimous jury verdict, and, for the same reasons detailed in *Holton*, that § 21.02 of the Texas Penal Code does not allow for non-unanimous jury verdicts. *Carbajal*, 659 S.W.3d at 183.

The state court's rejection of the instant claims was reasonable. To be sure, the Supreme Court has never held that juries applying continuous-sexual-abuse statutes must unanimously agree on the predicate offenses that establish continuous conduct. In fact, the only time it addressed the issue, the Supreme Court acknowledged in dicta that sexual-abuse-of-minor statutes "represent an exception," in that they "sometimes permit[] jury disagreement about a 'specific'

---

[5] *Holton v. State*, 487 S.W.3d 600 (Tex. App. 2015).

underlying criminal 'incident' insisting only upon proof of a 'continuous course of conduct' in violation of the law." *Richardson v. United States*, 526 U.S. 813, 821 (1999) (surveying state court review of sexual-abuse-of-minor statutes that do not require jury unanimity on predicate offenses). Because the Supreme Court has never held such statutes unconstitutional, there were no holdings for the Court of Criminal Appeals to contravene or unreasonably apply. *See Williams v. Taylor*, 529 U.S. 362, 381 (2000) ("If [the Supreme] Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle."). As Carbajal fails to overcome § 2254(d), he is not entitled to relief in this Court on Claims 30 and 31.

### J. Section 2254(d) Precludes Relief on Carbajal's Cumulative-Error Claim (Claim 32).

In Claim 32, Carbajal alleges that his due process rights were violated by the cumulative effect of the alleged errors from the preceding claims. Pet'r's Pet., ECF No. 1 at 79.

Because Carbajal fails to demonstrate any error, he fails to show that he was denied due process as a result of a cumulative error. *United States v. Moye*, 951 F.2d 59, 63 n. 7 (5th Cir.1992) ("Because we find no merit to any of Moye's arguments of error, his claim of cumulative error must also fail"); *see also Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (holding that relief can be granted for cumulative error in the conduct of a state trial where (1) the errors involved matters of "constitutional dimension"; (2) they are not procedurally defaulted; and (3) they "so infected the entire trial that the resulting conviction violates due process."). Since Carbajal fails to allege or demonstrate that the Court of Criminal Appeals' rejection of Claim 32

was unreasonable or contrary to established federal law, he is not entitled to relief on his cumulative error claim.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). He must make "a substantial showing of the denial of a constitutional right" before a certificate of appealability may issue. *Id*. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, he "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, he must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Reasonable jurists could not debate the Court's reasoning for denying Carbajal's claims on procedural or substantive grounds—or find that his current issues deserve encouragement to proceed in a federal court. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). The Court will, therefore, not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Carbajal has not met his burden of showing that the state-courts' adjudication of his claims (1) was contrary to' federal law then clearly established in the holdings of the Supreme Court, (2) involved an unreasonable application of such law, or (3) was based on an unreasonable determination of the facts' in light of the record before the state court. *Richter*,

562 U.S. at 100 (quotations and citations omitted). The Court further concludes that Carbajal has not shown that the state court's rejection of his claims was objectively unreasonable. The Court accordingly concludes that Carbajal is not entitled to § 2254 relief. The Court additionally concludes that Carbajal is also not entitled to a certificate of appealability. The Court, therefore, enters the following orders:

**IT IS ORDERED** that Jorge L. Carbajal's petition for a writ of habeas corpus (ECF No. 1) is **DENIED** and his cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Jorge L. Carbajal is **DENIED** a certificate of appealability.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**IT IS SO ORDERED**.

SIGNED this 17th day of June, 2025.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE